21-1247-pr
*Kaziu v. United States*

IN THE

# United States Court of Appeals

# For the Second Circuit

_____

AUGUST TERM, 2022

ARGUED: FEBRUARY 23, 2023
DECIDED: JULY 16, 2024

No. 21-1247-pr

BETIM KAZIU,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of New York.
1:09-cr-00660-FB – Block, *District Judge.*

_____

Before: CALABRESI, LYNCH, ROBINSON, *Circuit Judges.*

_____

CERTIFIED COPY ISSUED ON 07/16/2024

21-1247-pr
*Kaziu v. United States*

On April 14, 2019, Betim Kaziu filed a petition for habeas corpus relief under 28 U.S.C. § 2255, alleging that two of his four Counts of conviction were unlawful given intervening Supreme Court precedent. On May 3, 2021, Judge Block of the Eastern District of New York granted Kaziu's petition in part, vacating his conviction as to Count Four following an intervening change in law, and reducing the sentence for his original conviction on Count One—conspiracy to commit murder in a foreign country—by two years, from 27 years to 25. The district court resentenced Kaziu on the papers submitted, without a full in-person sentencing proceeding. Kaziu challenges the procedures required by district courts following a vacated conviction. He maintains that *de novo* resentencing is always required following a vacated conviction on a collateral appeal, and even if it is not always required, that *de novo* resentencing is required in his case because his convictions are inextricably linked. We need not determine the full scope of a district court's discretion to dispense with *de novo* resentencing following vacatur under § 2255 of one of multiple counts of conviction, because we conclude in this case that the district court exceeded its discretion in declining to conduct a full *de novo* resentencing on account of two factors: (i) the resentencing judge is not the original sentencing judge, and (ii) the defendant plausibly alleges changed circumstances. Accordingly, we **VACATE** the sentence imposed and **REMAND** for a full resentencing.

Judge Calabresi concurs in the judgment in a separate opinion.

Judge Lynch concurs in the judgment in a separate opinion.

———————————————

YOAV M. GRIVER, Zeichner Ellman & Krause LLP, New York, New York, *for Petitioner-Appellant Betim Kaziu*

2

21-1247-pr
*Kaziu v. United States*

BREON PEACE, United States Attorney, SARITHA KOMATIREDDY AND ROBERT M. POLLACK, Assistant United States Attorneys, Eastern District of New York, Brooklyn, New York, *for Respondent-Appellee United States of America.*

_____

CALABRESI, *Circuit Judge*:

## BACKGROUND

28 U.S.C. § 2255 allows prisoners in federal custody to attack the legality of their convictions or sentences collaterally. When a federal prisoner successfully challenges one or more of his convictions or sentences as invalid, § 2255(b) gives the district court, in certain situations, the discretion to choose among four remedies: the court may discharge the petitioner, resentence them, grant them a new trial, or correct their sentence. *Id.* In this case, we address two of these remedies—resentencing and correcting the sentence—and the bounds of the district court's discretion in choosing between them.

## FACTUAL BACKGROUND

This case arises from Betim Kaziu's convictions for his plan and attempt to join and aid foreign terrorist organizations. Kaziu was born in Brooklyn in 1988.

21-1247-pr
*Kaziu v. United States*

He lived there until February 2009, when he and his friend and co-conspirator, Sulejmah Hadzovic, flew to Cairo, Egypt, to join a terrorist organization and fight jihad.

Trial and Sentencing

Kaziu began his radicalization in 2007, around the age of 19. Videos posted online by terrorist groups depicting the United States as oppressing and murdering Muslims abroad prompted Kaziu and Hadzovic to embrace militant jihadism. In late 2008, the pair started planning to travel abroad in order to join a terrorist organization. Early the next year, they flew to Cairo, Egypt, intending to study Arabic and fight jihad.[1] While in Cairo, they met with individuals who could help them gain access to terrorist training facilities and weapons for the purpose of killing U.S. troops. In the summer of 2009, Hadzovic had a change of heart and eventually returned to the United States.

In July 2009, Kaziu traveled alone from Egypt to Kosovo to formulate a terrorist plot to kill Americans there. But his plans were intercepted. On August

---

[1] We adopt the definition of "fight jihad" as it was understood by Kaziu and Hadzovic. Hadzovic testified that jihad meant "fighting in a war" with the intention of killing U.S. troops and their allies, among other entities, in "places like Afghanistan, Pakistan, Chechnya, Somalia and Israel." Trial Tr. 341–44.

21-1247-pr
*Kaziu v. United States*

25, American law enforcement alerted Kosovar authorities of the possibility that Kaziu was engaged in a terrorist plot. A search of Kaziu's Kosovo apartment recovered Kaziu's laptop and video camera, his identification and travel documents, and a firearms catalog. In one of the recordings found on the video camera, Kaziu professed his imminent plan to die for Allah. Kaziu was arrested in Kosovo on August 27, 2009, and he was interviewed by FBI agents on August 28 and September 14 while incarcerated there. Kaziu was subsequently indicted in the Eastern District of New York on September 18, 2009. He was expelled from Kosovo and transferred to U.S. custody at Stewart Airport in Newburgh, New York on September 23, 2009.

The case proceeded to trial in 2011. The government sought conviction on four counts: conspiracy to commit murder in a foreign country in violation of 18 U.S.C. §§ 956(a)(1), 956(a)(2), and 3551 *et seq.* (Count One); conspiracy to provide material support to terrorists in violation of 18 U.S.C. §§ 2339A(a) and 3551 *et seq.* (Count Two); attempt to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §§ 2339B(a)(1), 2, and 3551 *et seq.* (Count Three); and conspiracy to use a firearm in violation of 18 U.S.C. §§ 924(o), 924(c)(1)(B)(ii), and 3551 *et seq.* (Count Four).

21-1247-pr
*Kaziu v. United States*

The jury found Kaziu guilty on all four counts. On each of Counts One and Four, Kaziu faced a statutory sentence range of any term of years or life imprisonment, and, on each of Counts Two and Three, a statutory sentence range of up to 15 years' imprisonment. Based on Kaziu's total offense level of 45 and his criminal history category of VI, the revised Presentence Report recommended a sentence of life imprisonment.

At his sentencing hearing, Kaziu addressed the court, maintaining his innocence (on the ground that he had not harmed anyone) and expressing some regret. But in light of Kaziu's continued defiance and limited acceptance of responsibility, the court (Gleeson, *J.*) explained that it did not "completely accept as genuine what [Kaziu] said" about feeling remorse, fearing it was merely "opportunistic." The court considered the other sentencing factors required by 18 U.S.C. § 3553(a) and sentenced Kaziu to 27 years' imprisonment on Count One, the statutory maximum sentences of 15 years on each of Counts Two and Three, and 27 years on Count Four, all to run concurrently. The total custodial sentence of 27 years was to be followed by lifetime supervision. This Court affirmed the convictions and sentences on direct appeal. *See United States v. Kaziu*, 559 F. App'x 32 (2d Cir. 2014).

21-1247-pr
*Kaziu v. United States*

Kaziu's 28 U.S.C. § 2255 Petition

In 2019, Kaziu petitioned the district court for post-conviction relief under 28 U.S.C. § 2255. He argued that his convictions for the murder conspiracy (Count One) and for the firearm conspiracy (Count Four) were unlawful given intervening Supreme Court precedents. The government disputed Kaziu's contention that his murder conspiracy conviction was invalid, but it agreed that Kaziu's firearm conspiracy conviction could no longer stand because *United States v. Davis*, 588 U.S. 445 (2019), invalidated as unconstitutionally vague a statutory provision on which the firearm conspiracy count was based.

At the time, the government took its long-held position that because one of the convictions—rather than one of the sentences—was invalid, Second Circuit law required *de novo* resentencing on each of the three remaining counts. J. App'x. at 103 (citing *United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016) (per curiam), for the position that "the remedy for conviction error is remanding for *de novo* resentencing"). *De novo* resentencing requires the district court to "reconsider the sentences imposed on each count, as well as the aggregate sentence," formulating anew the appropriate sentence for each unreversed conviction under the

21-1247-pr
*Kaziu v. United States*

individualized assessment required by § 3553(a). *United States v. Rigas*, 583 F.3d 108, 118 (2d Cir. 2009).

The district court (now Block, *J.*) did not immediately rule on Kaziu's petition. Instead, in October 2019, it entered an order scheduling a resentencing proceeding "[b]ased upon the Government's reply." J. App'x at 25. The sentencing hearing, initially set for February 2020, was repeatedly delayed by the parties' requests for extensions to submit documents and the COVID-19 pandemic.

The district court eventually scheduled the *de novo* resentencing hearing to occur telephonically in February 2021. But the government objected. A month before the telephonic hearing, it requested adjournment until health conditions improved, reasoning that, generally, "felony sentencing proceedings must take place in person" and that limited pandemic-era statutory exceptions to this rule did not apply. J. App'x at 261–63 (citing Fed. R. Crim. P. 43(a)(3)). The court acquiesced and pushed the *de novo* resentencing hearing to an in person proceeding in May 2021.

Kaziu, operating on the view that he would be resentenced *de novo*, had already submitted a sentencing memorandum contending that renewed

8

21-1247-pr
*Kaziu v. United States*

application of the § 3553(a) factors merited a sentence of no longer than 15 years given his reform during his intervening time in prison.

The government, however, changed its position as to the appropriate remedy for the unlawful conviction. In March 2021, two years after it had asserted that *de novo* resentencing was *required* and two months after it had argued that a *de novo* resentencing hearing conducted telephonically was improper, the government filed a memorandum arguing that *de novo* resentencing was not needed after all and, in fact, was not warranted here. The government's new memo cited three district court decisions which had held that our rule requiring *de novo* resentencing did not apply where a conviction was invalidated on collateral attack rather than direct appeal. *See* J. App'x at 276–77. Those courts read § 2255(b)'s option to "correct the sentence" to mean that they could vacate the sentence corresponding to the unlawful conviction without re-examining the unreversed convictions or their corresponding sentences at all. *See United States v. Hector Raymond Peña*, 17-cv-03891 (VM), 2020 WL 7408992, at *6 (S.D.N.Y. Dec. 17, 2020), *appeal dismissed*, No. 21-1199 Dkt. 58 (2d Cir. Nov. 17, 2021); *United States v. Medunjanin*, Nos. 19-cv-2371 (BMC), 20-cv-2755 (BMC), 2020 WL 5912323, at *8 (E.D.N.Y. Oct. 6, 2020); *Ayyad v. United States*, 16-cv-4346 (LAK), 2020 WL 5018163,

9

21-1247-pr
*Kaziu v. United States*

at *2 (S.D.N.Y. Aug. 24, 2020), *aff'd*, 2023 WL 1975682 (2d Cir. Feb. 14, 2023). That

is the course the government's new memorandum urged the court to take—

without a hearing, to vacate the 27-year sentence on Count Four, but retain the

sentences on the remaining counts. J. App'x at 278–79; 289–90.[2] The government

argued that because Count One also carried a sentence of 27 years that ran

concurrently with the other sentences, Kaziu's aggregate sentence would remain

the same—27 years—despite the vacatur of his conviction on Count Four and its

corresponding sentence.

Kaziu vehemently objected and requested that the court hold the *de novo*

resentencing as originally planned. *See* J. App'x at 345, 353. He disputed the

government's argument that the posture of the conviction challenge—on collateral

attack rather than direct appeal—affected the applicability of our *de novo*

---

[2] Notably, in cases where *de novo* resentencing might result in a longer sentence, the government has previously argued that full resentencing was proper, even when the factual interconnection between crimes was virtually non-existent. *See, e.g., United States v. Gordils*, 117 F. 3d 99, 101 (2d Cir. 1997); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (per curiam); *see also United States v. Denoyers*, 708 F.3d 378, 386-87 (2d Cir. 2013) (summarizing the government's argument that *de novo* resentencing requires the district court to consider evidence that was available to the government at the initial sentencing but was not presented). There is no indication that the government has changed its position in such cases. But in cases where *de novo* resentencing might result in a shorter sentence overall, the government now says that such resentencing is not required. The government has not explained the asymmetry.

10

21-1247-pr
*Kaziu v. United States*

resentencing rule. *See id.* at 349–50 (citing *United States v. Gordils*, 117 F.3d 99 (2d Cir. 1997) (declining to distinguish between direct appeals and § 2255 petitions in the sentencing context)). He further argued that, even if the government was correct that *de novo* resentencing was not required for all successful collateral attacks on convictions, it was required in his case because his convictions and sentences were interrelated.

In May 2021, the district court issued its decision on both the merits of Kaziu's § 2255 petition and the relief he sought, based only on the parties' written submissions. *See United States v. Kaziu*, No. 1:09-cr-00660-FB-1, 2021 WL 1751156 (E.D.N.Y. May 4, 2021). The court granted Kaziu's petition to vacate his conviction on Count Four, agreeing with both parties that the conviction for the firearms conspiracy was unlawful under *Davis*, *id.* at *2, but it denied Kaziu's petition to vacate his conviction on Count One, the murder conspiracy, finding it unaffected by intervening changes in the law. *Id.*

The court then turned to the remedy for the unlawful conviction on Count Four. Neither party disputed that the text of § 2255 obligated the court to vacate the unlawful conviction. *See* 28 U.S.C. § 2255(b) ("[T]he court shall vacate and set the judgment aside."). The question was whether the vacatur on Count Four

11

21-1247-pr
*Kaziu v. United States*

required the court to conduct *de novo* resentencing on all of the remaining counts of conviction, or whether it could merely "correct the sentence" by vacating the sentence corresponding to the unlawful conviction, as the government urged.

The court ultimately took a path between those advocated by the parties—it purported to resentence Kaziu, but did not conduct a full *de novo* resentencing. Citing the three district court decisions that the government had referenced, the court decided that it was not obligated to conduct *de novo* resentencing following every successful § 2255 collateral attack of a conviction. *See Kaziu*, 2021 WL 1751156, at *2. The court concluded that the Second Circuit's default rule of *de novo* resentencing upon conviction vacatur applied only in direct appeals and did not extend to the "meaningfully differ[ent]" context of collateral attacks. *Id.* The court reached this conclusion because of "the 'narrow scope' of § 2255 and the more limited availability of relief under that statute, which 'reflects an interest in the finality of a criminal judgment . . . that is not present on direct appeal.'" *Id.* (quoting *Medunjanin*, 2020 WL 5912323, at *8).

But unlike the courts it cited, the district court did not just vacate the part of the sentence based on the unlawful conviction; it also chose to reweigh the § 3553(a) sentencing factors pertaining to one of Kaziu's lawful convictions.

12

21-1247-pr
*Kaziu v. United States*

Because Kaziu had argued that a 15-year sentence was appropriate, equal to his concurrent sentences on Counts Two and Three, the court re-evaluated his 27-year sentence for Count One, the murder conspiracy. *See Kaziu*, 2021 WL 1751156, at *3. Balancing the seriousness of the offense against both the lack of harm inflicted by the foiled plot and Kaziu's subsequent reform while in prison, the court reduced the sentence by two years, to 25 years, to be followed by lifetime supervision. *Id.* at *4.

The court did not re-examine the sentences for the other remaining convictions. Consistent with its written decision, the district court entered judgment sentencing Kaziu to 25 years on Count One, and 15 years each on Counts Two and Three, all to run concurrently, for an aggregate term of 25 years.

Kaziu timely appealed.[3] He raises three principal arguments. First, he contends that *de novo* resentencing is *always* required where a defendant

---

[3] For jurisdiction over an appeal from a final § 2255 decision to vest in this Court, the district court or this Court must typically grant a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1)(B); *see also Krantz v. United States*, 224 F.3d 125, 126 (2d Cir. 2000) (per curiam). Nevertheless, as this Court ruled in response to Kaziu's motion for a COA to challenge the reasonableness of his sentence, a COA is not required to appeal a resentencing following a successful § 2255 claim. Many of our sister circuits have reached the same conclusion. *See, e.g., Ajan v. United States*, 731 F.3d 629, 631–32 (6th Cir. 2013); *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012); *United States v. Futch*, 518 F.3d 887, 895 (11th Cir. 2008); *United States v. Hadden*,

13

21-1247-pr
*Kaziu v. United States*

successfully collaterally attacks their conviction as unlawful. Second, he contends that, even if it is not always required, both our conviction errors precedent and due process required full *de novo* resentencing in his case because his convictions were inextricably linked to one another. Finally, he challenges his 25-year aggregate sentence as unreasonable.[4]

While Kaziu's appeal was pending, this Court decided *United States v. Jose Peña*, 58 F.4th 613 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 147 (Mem.) (2023).[5] *Peña* held that the plain text of § 2255(b) affords district courts the authority to choose between, *inter alia*, conducting a *de novo* resentencing on all remaining counts of conviction or merely correcting the sentence. *See Peña*, 58 F.4th at 618–20. Accordingly, *Peña* forecloses Kaziu's first argument that *de novo* resentencing is categorically required whenever a conviction is vacated on collateral attack. But

---

475 F.3d 652, 663–66 (4th Cir. 2007); *United States v. Lafayette*, 337 F.3d 1043, 1046 (D.C. Cir. 2003); *see also Illarramendi v. United States*, 906 F.3d 268, 270 (2d Cir. 2018) (per curiam) ("[A] COA is not required when appealing from orders in a habeas proceeding that are collateral to the merits of the habeas claim itself."). We reaffirm here that a COA was not necessary to give us jurisdiction to review that challenge.

[4] We do not address Kaziu's reasonableness argument, as we vacate and remand for full *de novo* resentencing.

[5] While this opinion has two different cases with *Peña* defendants, the *Peña* shorthand will be used to describe solely *Jose Peña*'s case, 58 F.4th 613.

14

21-1247-pr
*Kaziu v. United States*

*Peña* does not address the thrust of Kaziu's second argument, which concerns the limits of the district court's discretion in choosing among § 2255(b)'s remedies.

*Peña* specifically demurred on this issue. Because in *Peña de novo* resentencing would have been "strictly ministerial" (the district court in *Peña could not* have shortened his carceral term), and hence resentencing would not be needed *even on direct appeal*, *Peña* expressly declined to define the circumstances under which a district court abuses its discretion when it fails to resentence a defendant *de novo* following a *successful collateral attack on a conviction*.[6] *Id.* at 623. *Peña* did suggest that it might be the case that most of the time district courts should be required to conduct *de novo* resentencing even in habeas cases: "[i]t may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Id.* at 623. But it did not decide that question, and neither do we. Rather, we address two factors which make a failure to resentence fully an abuse of discretion in the instant case.

---

[6] *Peña* had failed to show that resentencing would not be strictly ministerial.

21-1247-pr
*Kaziu v. United States*

**DISCUSSION**

Prior to this Court's decision in *Peña*, we explored the process due to criminal defendants following conviction errors. Specifically, in the direct appeal context, we held that following the vacatur of a conviction, courts were required to conduct *de novo* resentencing, and we detailed the procedural expectations at resentencing: "a district court that is required to resentence *de novo* must reconsider the sentences imposed on each count, as well as the aggregate sentence." *Rigas*, 583 F.3d at 118.

We later noted that this rule did have one viable exception: *de novo* resentencing is *not* required when the resentencing would be "by force of law, 'strictly ministerial,'" meaning that the "defendant has already received, as his or her sentence on an upheld count of conviction, a mandatory minimum sentence." *Powers*, 842 F.3d at 180 (quoting *Burrell v. United States*, 467 F.3d 160, 166 & n.4 (2d Cir. 2006)).

In *Peña*, however, we declined in the collateral attack context to mirror our direct appeal *Rigas/Powers de novo* resentencing rule. We cited the statutory language of § 2255(b) which affords district courts the authority to choose between sentence correction and resentencing. But *Peña* explicitly noted that this authority

16

21-1247-pr
*Kaziu v. United States*

remained subject to abuse of discretion review, and that, perhaps even in *most* non "strictly ministerial" cases, a court would abuse its discretion when it failed to conduct *de novo* resentencing. 58 F.4th at 623.  Here, two factors combine to limit the district court's discretion to dispense with plenary resentencing.

## A.

The district court judge in this case, Judge Block, was not the original sentencing judge. Unlike the original sentencer (here Judge Gleeson) who retains privileged access to the rationale behind the original sentence, a deep familiarity of the facts, and an in-person observation of the defendant's allocution, a new judge ruling on a 2255(b) petition comes to the case without this type of insider information. As a result, it may well be that Kaziu's original sentence relied, at most, minimally on his (now vacated) 924(c) conviction; Judge Gleeson may have determined that the bulk of Kaziu's original sentence on his remaining counts was based on the terroristic conspiracy itself, and not on the fact that this conspiracy when reduced to its individual elements, constituted a statutory "crime of violence." But Judge Block does not know the contours of Judge Gleeson's decision-making and to what degree (if any) the now vacated convictions may have inflated Kaziu's sentences on his remaining convictions. While the

17

21-1247-pr
*Kaziu v. United States*

sentencing transcript does not suggest that the sentence imposed on Kaziu's conviction for his involvement a terroristic conspiracy was motivated by whether it was a statutory "crime of violence," there is nothing in the record that suggests it was not. Ultimately, a new judge cannot be certain that simply lopping off the sentence of a vacated count sufficiently remedies a sentencing package that did, in some undetermined, opaque capacity, factor in a now vacated conviction.

Significantly, this very concern was implicit in our discussion in *Quintieri*. There on review of the defendant's § 2255 challenges to both his conviction and sentence, we explained that when one count in a multi-part conviction is vacated, *de novo* resentencing is generally required as we cannot be certain how the "constellation of offenses of conviction" that were considered at sentencing were weighed, and ultimately, to what extent each was determinative to the defendant's sentence. *United States v. Quintieri*, 306 F.3d 1217, 1227–28 (2d Cir. 2002). We there noted that if a conviction is overturned and later remanded, "the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered." *Id.* This concern grows more sensitive when the original sentencing judge is no longer present. In such cases, not only has the constellation

18

21-1247-pr
*Kaziu v. United States*

and factual mosaic changed, but the original understanding of how that factual mosaic and the constellation was originally packaged together is unknown. The original sentencing judge perhaps could conclude, by referencing notes or consulting other preparation materials, that an overturned conviction was an insignificant piece of the original sentencing decision, an outer star that never really contributed to the greater constellation. But a new judge does not have that same knowledge.

The new judge may, as our concurring colleague suggests, hypothesize from the sentencing record or the sentence itself how the sentencing judge viewed the relationship between the now-vacated count and the remaining counts. Judge Lynch Concurrence at 7–9. But a learned hypothesis is a weak substitute for direct knowledge of how the "constellation of offenses of conviction" impacted the defendant's sentence. *Quintieri*, 306 F.3d at 1227–28.

**B.**

Kaziu presented plausible allegations of changed circumstances that suggest that the original rationale underlying the sentence—that he was a committed and unredeemed terrorist—no longer applies. Kaziu submitted to the court a lengthy memorandum in support of *de novo* resentencing, which stressed

19

21-1247-pr
*Kaziu v. United States*

that several factors which may have contributed to his original sentence are no longer present. *See* J. App'x at 140–214.

First, Kaziu has exhibited virtually no violent tendencies since his incarceration. Kaziu has spent the preceding 11 years in a series of federal prisons with a "near-flawless disciplinary record[,]" his sole infraction was a fight in his very first year "when another prisoner stole his wrist-watch." J. App'x at 185. Kaziu has since avoided conflicts.

Second, Kaziu has moved on from his religious extremist ideologies. Kaziu plausibly detailed that his relationship with the Qu'ran has changed after he began studying and reading Arabic. Kaziu notes that his new language skills provide a personal relationship with the Qu'ran "rather than relying on interpretations from others[,]" and this ensures that he is less "vulnerable to [] misinformation of anyone who claim[s] to be an 'expert[.]'" *Id.* at 191. Kaziu explicitly concedes that he was "caught in an extreme interpretation of the narrative of Islam" and has "replace[d] the crude one [he] had at nineteen" with an interpretation that calls for righteous, virtuous behavior. *Id*. Kaziu further bolstered this position when his counsel submitted an expert consultation from a qualified authority on American *jihadi* conversion, Dr. Yasir Qadhi, who noted that Kaziu "did view extremist

20

21-1247-pr
*Kaziu v. United States*

ideologies with some sympathies, but ha[s] since moved on and clearly seen that they were wrong." *Id* at 193. Dr. Qadhi has further opined that he does not find Kaziu to represent a continued threat to society.

Third, Kaziu has invested in his educational future. Kaziu, who was a ninth-grade dropout when he was first incarcerated, has since earned his GED, received certifications in psychology, nutrition, and wellness courses, completed a Vocational Trade Culinary Arts Program, and envisions pursuing an undergraduate degree and social work. *Id.* at 186–88.

Kaziu has thus plausibly claimed that he is nonviolent, has reordered his relationship with Islam, and has positioned himself to be a productive member of society. This is a foundational departure from the type of person Kaziu was when he was originally arrested, convicted, and sentenced. We conclude that Kaziu adequately alleges sufficient changed circumstances so that a district judge might wisely consider his arguments at a full *de novo* resentencing[7].

---

[7] While Judge Lynch's concurrence is correct that our sentencing system is generally unfriendly to revisions of sentences due to changed circumstances, the authorities he relies on for this position do not apply to the situation before us. All involve cases where following the imposition of a facially correct sentence, a litigant appeals to the district court for a "second look" solely due to changed circumstances. Congress and the courts have prudently circumscribed these situations to avoid what had become a deluge of attacks on valid sentences. Here, instead,

21

21-1247-pr
*Kaziu v. United States*

*   *   *

Taking these two factors at least in tandem, because the resentencing judge is not the original sentencing judge and Kaziu presents plausible arguments of changed circumstances, we conclude that the district court exceeded its discretion in declining to resentence *fully* following Kaziu's successful habeas petition.

## C.

We note that Judge Block did wrestle with deciding the appropriate process Kaziu should receive, ultimately deciding to conduct a "resentencing" on the papers. To wit, Judge Block did more than solely strike the vacated count and its sentence, but "rebalanc[ed] the 3553(a) sentencing factors," and even changed the sentence on a remaining count by reducing the sentencing on Count One from 27

---

Kaziu's conviction has been successfully challenged, and his original sentence is now concededly incorrect. It is in the context of deciding how best to reach a proper sentence that the majority deems changed circumstances relevant.

Significantly, if a full resentencing is decided upon, the panel (including the concurrer) agrees that changed circumstances are a proper consideration in determining what the new sentence should be. The decision, whether merely to correct the invalid sentence by dropping the part that was based on the invalid conviction or to engage in a full resentencing, is a decision that seeks, in the particular circumstances of any given case, to give rise to a proper sentence. In such circumstances, everything that is relevant to reaching a proper sentence is relevant to the decision of whether to correct or to resentence. And that, necessarily includes changed circumstances.

22

21-1247-pr
*Kaziu v. United States*

to 25 years. *Kaziu*, 2021 WL 1751156, at \*2, 4. But this approach is insufficient. Though Judge Block did endeavor to resentence Kaziu, given the two factors identified above, we conclude that a full *de novo* resentencing was required.

This is so because a resentencing is, for the purposes of procedural protections, no different from an initial sentencing: "[A] defendant has a constitutional right to be present [during resentencing], because technically a new sentence is being imposed in place of the vacated sentence." *United States v. DeMott*, 513 F.3d 55, 58 (2d Cir. 2008) (quoting *United States v. Arrous*, 320 F.3d 355, 359 (2d Cir. 2003)). While Judge Block's resentencing process did engage in the necessary legwork of revisiting the 3553(a) factors, the result was not the full, *de novo* resentencing our holding requires (critically, Kaziu was never given the opportunity to give his new allocution, and thus never came before the court). In sum: when a resentencing is required, it necessitates the full panoply of procedural protections defendants are entitled to in a standard sentencing. This was not done in this case.[8]

---

[8] Because we decide this case on abuse of discretion grounds, we expressly leave open two questions that *Peña* did not decide—questions that are the subject of separate concurrences in this case.

23

21-1247-pr
*Kaziu v. United States*

# CONCLUSION

Accordingly, we **VACATE** the sentence imposed and **REMAND** for *de novo* resentencing.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

The first is whether resentencing is required in *any* case in which resentencing would not be simply ministerial. *See* Judge Calabresi Concurrence.

The second is whether — even if a correction, rather than a resentencing, would be sufficient — once a district court opts to resentence, it must meet all the procedural requirements of a full resentencing. *See* Judge Lynch Concurrence in the mandate.